UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| ALANA M. DeYOUNG, | CIV. NO. 1:13-322 WBS |
| Plaintiff, | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| v. | |
| WEISER VALLEY HOSPITAL DISTRICT, aka WEISER MEMORIAL HOSPITAL; REUBEN DeKASTLE; LORI COATES; and MAUREEN RALEIGH, | |
| Defendants. | |

----oo0oo----

This matter is before the court on defendants' motion to dismiss plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Complaint contains claims under 1) 42 U.S.C. § 1983 for violation of plaintiff's First Amendment rights; 2) § 1983 for violations of her rights to procedural due process; 3) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2006); 4) the Idaho Human

1

Rights Act, Idaho Code §§ 67-5901 to 67-5912; and 5) Idaho state law for wrongful termination.  In response to defendants' motion, plaintiff indicates that she does not oppose dismissal of her Title VII and IHRA claims.  (Pl.'s Opp'n at 5 (Docket No. 10).) The court accordingly will address only the remaining claims.

I.  Plaintiff's 42 U.S.C. § 1983 Claim for Violation of Her First Amendment Rights

Plaintiff alleges that she worked as a Registered Nurse ("RN") at Weiser Memorial Hospital ("Weiser Memorial"), primarily in the operating room, for three years before RN supervisor Lori Coates informed her that she was being reassigned to "floor responsibilities" on the Med-Surgical Floor, would be required to work a twelve-hour shift that week, and would have a fluctuating schedule after the reassignment.  (Compl. ¶¶ 4, 7, 11.) Plaintiff alleges that part of the "agreed upon conditions" of her employment with Weiser Memorial was that she would work a set schedule of eight-hour shifts five days per week in order to accommodate her responsibilities as a single mother.  (Id. ¶ 12.)

After several alleged oral discussions between plaintiff, Coates, RN supervisor Maureen Raleigh, Chief Nursing Officer Reuben DeKastle, and Human Resources Manager Terri Kautz, plaintiff alleges that on June 21, 2012, she filed a written complaint with the Weiser Memorial Human Resources Department. In her Complaint in this action, plaintiff alleges that on July 2, 2012, she was summoned to a meeting with DeKastle, Coates, Raleigh, and Kautz in which she was given the ultimatum to "resign or be fired."  (Id. ¶¶ 17-18.)  After requests for time to consider the decision were denied, plaintiff was terminated.

(Id. ¶ 18.) The basis of plaintiff's First Amendment claim is that her termination was "in retaliation against her for filing a formal Grievance/Complaint on June 21, 2012." (Id.)

Although that grievance/complaint is not attached to the Complaint in this action, in an affidavit by Kautz, defendants have provided a copy of the "Employee Conflict Resolution Form" with the same date, and Kautz attests that it is a copy of the grievance plaintiff submitted. (Docket No. 5.) Because plaintiff alleges the existence of this document in the Complaint and does not dispute the authenticity of the copy defendants submitted, the court may consider it for purposes of the pending motion to dismiss. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2006).[1]

Plaintiff's formal grievance/complaint reads as follows:

> To Whom It May Concern
>
> I was approached by Lori Coats RN in the hall outside the recovery room and informed that I would have to take a 12 hour shift on Tuesday or Wednesday on the floor and I had no option. I would have to choose one of those days. Lori was hostile in her approach and I felt harassed and bullied at that time. I later went to Maureen Raleigh as per Lori's request and asked her about it. Maureen also insisted that I take a shift because that was the fair thing to do.
>
> I expressed frustration at the last several months and how they had been handled by the management in regards to conflicts between Jenny Serviates and myself. At that time they requested Reuben's presence in the meeting. I asked for an advocate and they refused me that request. Reuben came in and also strongly suggested that I work Tues 8 hours of orientation and

---

[1] The court cannot, however, consider the affidavit plaintiff submitted in support of her opposition to defendants' motion to dismiss. See United States v. Ritchie, 342 F.3d 903, 909 (9th Cir. 2003).

3

then Wed 8 hour shift. I felt completely bullied and harassed by the three of them. They made me feel small and invaluable as an employee. They did offer other suggestions in regard to the schedule on Tues and Wed, but I did not feel at liberty to take them up on any of them without retaliation.

For the last 4 months I have been bullied by the administration at Weiser Memorial Hospital. I have been informed that I had to take whatever they and Jenny Serviates had to say or do to me and not tell anyone. I was forced to sign a corrective action that I would not talk about what was happening at work to anyone. This in essence made it impossible for me to feel safe at work. In order to keep my job I was forced into mediation that was arranged by the management at Weiser memorial Hospital and forced to tolerate all of this without any kind of personal advocate.

In essence, I feel bullied and harassed by the Management in particular Lori Coats and Reuben DeCastle. The work environment has been consistently hostile and unfriendly with management especially in the operating room.

At this time I am considering tendering my resignation as it has become apparent that the management will continue this hostile and harassing behavior towards me until I take such actions.

Alana DeYoung RN

(Docket No. 5.)

In order to state a § 1983 First Amendment retaliation claim against a government employer, a plaintiff must allege that she spoke on a matter of public concern. Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). Whether the plaintiff spoke on a matter of public concern is "purely a question of law." Id. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). This inquiry "is not an exact science," Weeks v. Bayer, 246 F.3d 1231, 1234 (9th Cir.

4

2001), but requires more of "a generalized analysis of the nature of the speech." Desrochers v. City of San Bernardino, 572 F.3d 703, 708-09 (9th Cir. 2009). If a public employee's speech does not touch on a matter of public concern, the speech is not protected under the First Amendment. Rendish v. City of Tacoma, 123 F.3d 1216, 1219 (9th Cir. 1997).

A. Content

The first inquiry--the content of a given statement--is "'the greatest single factor in the Connick inquiry.'" Johnson v. Multnomah County, 48 F.3d 420, 424 (9th Cir. 1995) (quoting Havekost v. U.S. Dep't of the Navy, 925 F.2d 316, 318 (9th Cir. 1991)). "To address a matter of public concern, the content of the [employee's] speech must involve 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" Desrochers, 572 F.3d at 710. "On the other hand, speech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)). Similarly, "'speech that relates to internal power struggles within the workplace,' and speech which is of no interest 'beyond the employee's bureaucratic niche'" generally do not involve matters of public concern. Desrochers, 572 F.3d at 710 (quoting Tucker v. Cal. Dep't of Educ., 97 F.3d 1204, 1210 (9th Cir. 1996)).

There can be no question here that the content of

plaintiff's written grievance does not address a matter of public concern. The Ninth Circuit has repeatedly held that an employee's private grievance about his or her superiors generally does not involve a matter of public concern. See Desrochers, 572 F.3d at 712 n.8, 713 ("Merely cataloguing a strained working relationship with a superior does not necessarily allege actual or potential wrongdoing or breach of public trust. . . . [W]hen working for the government, saying one's boss is a bully does not necessarily a constitutional case make.") (internal quotation marks omitted) (second alteration in original); Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir. 1992) ("Speech focused solely on internal policy and personnel grievances does not implicate the First Amendment."); Havekost, 925 F.2d at 318 (holding that a complaint about dress code and staffing policies is "nothing more than a workplace grievance" and noting that a "critical inquiry is whether employee spoke in order to bring wrongdoing to light or merely to further some purely private interest"); see also Desrochers, 572 F.3d at 713-14 (citing cases from the Seventh, Fifth, and Tenth Circuits as reaching similar conclusion).

To lend support to a finding of public concern, the content of complaints about management must reach beyond personal grievances to issues of "broader societal concern." Desrochers, 572 F.3d at 713. For example, the Ninth Circuit found it significant that public complaints about the management of a library highlighted how the alleged mismanagement was negatively affecting library service. See Lambert v. Richard, 59 F.3d 134, 136 (9th Cir. 1995) ("Given that operation of a public library is among the most visible of the functions performed by city

6

governments, [the employee] had a Constitutional right--and perhaps a civic duty--to inform the council if library service was jeopardized by poor management at the top.").

In <u>Desrochers</u>, on the other hand, the Ninth Circuit found the content of complaints insufficient to support a finding of public concern even when the grievances at issues stated that the supervisors' actions "made it difficult for [the sergeants'] teams to function" and impacted the police department "in a negative way." <u>Desrochers</u>, 572 F.3d at 712. In finding the content of the grievances insufficient, the Ninth Circuit emphasized the absence of "accounts of failed law enforcement efforts, [] descriptions of botched investigations, and [] discussion of duties the [police department] was unable to perform in a competent fashion due to the actions of the sergeants' supervisors." <u>Id.</u> Here, plaintiff's statements about her supervisors are limited to her personal frustrations with management and do not even suggest that her supervisors' conduct was negatively impacting the hospital, other employees, or patients.

B. <u>Form</u>

The Supreme Court has acknowledged that "'the public's interest in receiving the well-informed views of government employees engaging in civic discussion' is one of the primary purposes of its First Amendment retaliation jurisprudence." <u>Id.</u> at 714 (quoting <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 419 (2006)). Consequently, speech that takes the form of "internal employee grievances which were not disseminated to the public . . . cuts against a finding of public concern." <u>Id.</u> at 715; <u>see also</u> <u>Roe</u>

7

v. City & County of San Francisco, 109 F.3d 578, 585 (9th Cir. 1997) ("Although not dispositive, . . . [a] limited audience weigh[s] against [an employee's] claim of protected speech."); Gilbrook v. City of Westminster, 177 F.3d 839, 866 (9th Cir. 1999) ("An employee's motivation and the audience chosen for the speech also are relevant to the public-concern inquiry.").

Here, plaintiff's statements were not directed at the public. Her complaints were presented in a written, internal personnel grievance, aimed neither toward the public nor made in a form that the public would likely discover. The form of plaintiff's statements thus also weighs against a finding of public concern.

C. Context

The last Connick factor examines the context of the statements, which seeks to decipher "the point of the speech." Chateaubriand v. Gaspard, 97 F.3d 1218, 1223 (9th Cir. 1996). The inquiry questions whether "speech 'seek[s] to bring to light actual or potential wrongdoing or breach of public trust,' or is [] animated instead by 'dissatisfaction' with one's employment situation." Desrochers, 572 F.3d at 714 (quoting Connick, 461 U.S. at 148). Like the plaintiff in Connick, who was "strongly opposed to [a] proposed transfer," 461 U.S. at 140, plaintiff's formal grievance was clearly motivated by the way in which her supervisors treated her, their change to her schedule, and their requirement that she work on the Med-Surgical Floor. These motivations likewise weigh against a finding of public concern.

Accordingly, the court concludes as a matter of law that none of the statements contained in plaintiff's formal

complaint/grievance raised matters of public concern, and thus may not form the basis for a claim under § 1983 for violation of First Amendment rights.

Plaintiff argues that certain oral statements regarding her lack of training which she allegedly made in the course of her discussions with DeKastle, Coates, and Raleigh were "directly related to the general well-being and concern for the patients" and thus protected by the First Amendment. (Compl. ¶ 13.) However, it is not alleged in the Complaint that plaintiff's termination, or any other adverse employment action for that matter, was in retaliation for any of those oral statements. To the contrary, the Complaint expressly and unequivocally states that plaintiff was "terminated in retaliation against her for filing a formal Grievance/Complaint on June 21, 2012." (Id. ¶ 18). To argue otherwise now is, in effect, to contradict those express and unequivocal allegations of the Complaint.

II. Plaintiff's 42 U.S.C. § 1983 Claim for Violation of Procedural Due Process

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[T]he range of interests protected by procedural due process is not infinite," and "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 570, 577 (1972). Moreover, property interests "are not created by the Constitution, . . .

9

they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

"In a pair of companion cases handed down the same day, the Supreme Court explained that government employees can have a protected property interest in their continued employment if they have a legitimate claim to tenure or if the terms of the employment make it clear that the employee can be fired only for cause." Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs., 727 F.3d 917, 922 (9th Cir. 2013) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576-78 (1972); Perry v. Sindermann, 408 U.S. 593, 599–603 (1972)). Here, plaintiff's Complaint lacks a single allegation even giving rise to the inference that she had a legitimate claim of entitlement to employment at Weiser Memorial Hospital, much less to her schedule, floor assignment, or position. Absent a protected property interest, plaintiff lacks a cognizable § 1983 claim based on the deprivation of any property without the requisite procedural due process and the court must therefore grant defendants' motion to dismiss that claim.[2]

---

[2] Although plaintiff's Complaint alleges that her termination "without appropriate investigation or evidentiary hearing" deprived her of the "right to due process and equal protection," the remaining allegations in the Complaint and plaintiff's opposition to defendants' motion to dismiss do not suggest that plaintiff is also alleging a § 1983 claim based on a violation of the Equal Protection Clause. The Supreme Court has also held that "the class-of-one theory of equal protection has no application in the public employment context" based, in part, on the "common-sense realization that government offices could not function if every employment decision became a constitutional

10

III. Plaintiff's State Law Wrongful Termination Claim

Although plaintiff's Complaint alleges a state law claim for wrongful termination, plaintiff fails to address this claim in her opposition to defendants' motion to dismiss. More importantly, because plaintiff's federal claims do not survive defendants' motion to dismiss, the court declines to exercise supplemental jurisdiction over her state law claim. See 28 U.S.C. § 1367(c)(3) ("[A court] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."); Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996), overruled on other grounds by Acri v. Varian Assocs., Inc., 114 F.3d 999, 1000 (9th Cir. 1997) ("[I]n the usual case in which federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.").

IT IS THEREFORE ORDERED that defendants' motion to dismiss the Complaint be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date this Order is signed to file an amended complaint, if she can do so consistent with this Order.

Dated: March 31, 2014

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

matter." Engquist v. Or. Dep't of Agric., 553 U.S. 591, 607 (2008) (quoting Connick, 461 U.S. at 143) (internal quotation marks omitted). Nor does plaintiff allege that she was a part of some "identifiable group," as is required in a traditional equal protection claim. Id. at 601 (quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979)).